

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. R. C. Wilson
County Auditor
Gray County
Pampa, Texas

Dear Sir:

Opinion No. O-1975
Re: Would payment of premiums for
insurance on the courthouse
be a proper charge against the
Permanent Improvement Fund?

Your request for an opinion on the above
stated question has been received by this department.

We quote from your letter as follows:

"We have been unable to find either
comprehensive opinions from the office of
the Attorney General or decisions from the
higher courts relative to expenses that may
properly be paid from the Permanent Improve-
ment Fund. Apparently, the general assump-
tion has been that additions, major repairs
and alterations, i.e., permanent partitions,
painting, furniture, repairs to heating and
plumbing, and lighting systems, roofing,
etc., would be proper charges against this
fund.

"An opinion, dated August 9, 1959, by
the Honorable J. A. Broadhurst, Assistant
Attorney General, holds that adding machines,
typewriters, deed records, rebinding perman-
ent records and sewing machines for sewing
room may not be purchased with Permanent
Improvement Funds. We assume that this pro-
hibition would also be applicable to refriger-
ation or any other equipment not a part of the
building. (underscored date is an error)

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"Would payment of premiums for insurance
on the courthouse be a proper charge against
this fund?"

In this opinion we are not attempting to pass
upon or set out all the expenses that may properly be
paid from the permanent improvement fund or those ex-
penses which cannot be paid from such fund. We are only
answering your specific question contained in your in-
quiry. However, in compliance with your request we are
enclosing copies of our opinions Nos. 0-1647, 0-1069,
0-1082, 0-93, 0-37, 0-1810 and 0-629, regarding expenses
which may or may not be properly paid from the permanent
improvement fund.

If the enclosed copies of the above mentioned
opinions and this opinion do not answer any specific
questions you have in mind, we will be glad to render
an opinion on any specific question you desire to direct
to this department.

Section 9 of Article 8 of the Texas Constitution
reads as follows:

"The State tax on property, exclusive of
the tax necessary to pay the public debt, and
of the taxes provided for the benefit of the
public free schools, shall never exceed thirty-
five cents on the one hundred dollars valua-
tion; and no county, city or town shall levy
more than twenty-five cents for city or county
purposes, and not exceeding fifteen cents for
roads and bridges, and not exceeding fifteen
cents to pay jurors, on the one hundred dol-
lars valuation, except for the payment of debts
incurred prior to the adoption of the amendment
September 25th, 1883; and for the erection of
public buildings, streets, sewers, water works
and other permanent improvements, not to exceed
twenty-five cents on the one hundred dollars
valuation, in any one year, and except as is
in this Constitution otherwise provided; and
the Legislature may also authorize an addition-
al annual ad valorem tax to be levied and col-
lected for the further maintenance of the public

roads; provided, that a majority of the quali-
fied property tax-paying voters of the county
voting at an election to be held for that pur-
pose shall vote such tax, not to exceed fif-
teen cents on the one hundred dollars valuation
of the property subject to taxation in such
county. And the Legislature may pass local
laws for the maintenance of the public roads
and highways, without the local notice required
for special or local laws."

The above quoted provision of the Constitution
prescribed the maximum rate of taxes for general purposes,
for roads and bridges, for jurors, and for permanent im-
provements, respectively. The monies accruing from taxes
levied and collected for each of the enumerated purposes
are constitutional funds; and the commissioners' court has
no power or authority to transfer money from one fund to
another or to expend for one purpose tax money raised os-
tensibly for another purpose.

The immediate purpose of the above mentioned
provision of the Constitution is to limit the amount of
taxes that may be raised for these several purposes, re-
spectively; but it is also intended to inhibit excessive
expenditures for any such purpose, and to require that
any and all monies raised by taxation for a particular
purpose shall be applied to that purpose and to no other.
Ault vs. Hale County, 116 SW 359; Henderson County vs.
Burke, 262 SW 94.

The case of Carroll vs. Williams, 202 SW 504,
holds, among other things, that the Constitution contem-
plates that, as a matter of common honesty and fair deal-
ing, tax money taken from the people ostensibly for one
purpose shall be expended for that purpose alone, as well
as the tax rate, for that particular class, shall not ex-
ceed the prescribed maximum.

In view of the foregoing authorities, you are
respectfully advised that it is the opinion of this de-

partment that the payment of premiums for insurance on the courthouse cannot be legally paid from the Permanent Improvement Fund.  The payment of premiums for insurance on a courthouse would be an expenditure for a general purpose of the county and, therefore, such expenditure should be paid out of the General Fund.

Trusting that the foregoing fully answers your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Ardell Williams

Ardell Williams
Assistant

AW:AW

ENCLOSURES

APPROVED MAR 12, 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY BWB